IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                    )
ADELA MEARIG,                       )
                                    )
            Plaintiff,              )
v.                                  ) Civ. No. 16-00500 ACK-KSC
                                    )
CHUGACH ALASKA CORPORATION,         )
                                    )
            Defendant.              )
_____)

**ORDER GRANTING DEFENDANT'S JUNE 22, 2017 MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S AUGUST 9, 2017 MOTION FOR SUMMARY JUDGMENT**

For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment filed on June 22, 2017, ECF No. 33. The Court DENIES Defendant's Motion for Summary Judgment filed on August 9, 2017, ECF No. 36, as moot. The Court DISMISSES the case WITHOUT PREJUDICE.

**FACTUAL BACKGROUND**

In July 2015, Plaintiff Adela Mearig ("Plaintiff") was hired by Chugach Federal Solutions, Inc. ("CFS") as a temporary cook on Wake Island. Def. June 22, 2017 CSF, Hopper Decl. ¶ 4; Complaint ("Compl") ¶ 4. Chugach Federal Solutions has been a wholly owned subsidiary of Chugach Government Solutions ("CGS") since 2013. Def. June 22, 2017 CSF, Hopper Decl. ¶¶ 3-4. Chugach Government Solutions was established in 2013 as a holding company for Defendant Chugach Alaska Corporation's ("Defendant" or "CAC") subsidiaries, which perform government

1

contracting work.  Id.

Plaintiff alleges that between July 26, 2015 and September 27, 2015 she was subject to sexual harassment, sexual assault, verbal harassment, and physical violence by Defendant CAC's employees.  Compl. ¶ 4.  She was discharged from her position on October 18, 2015 and filed an administrative charge with the EEOC regarding the alleged discrimination and retaliation in April 2016.  Id. ¶¶ 4, 9.  The EEOC closed its file on Plaintiff's charge on June 22, 2016 because CAC employs less than the required number of employees or is otherwise not covered by the statutes.  Id. at 5.

**PROCEDURAL BACKGROUND**

Plaintiff, acting pro se, filed a Title VII complaint in federal court on September 12, 2016.  Defendant filed a motion for summary judgment on June 22, 2017 ("June 22, 2017 Motion") with a concise statement of facts in support of that motion ("Def. June 22, 2017 CSF").  ECF Nos. 33, 34.  Defendant filed a second motion for summary judgment on August 9, 2017 ("August 9, 2017 Motion") with a concise statement of facts in support of that motion.  ECF Nos. 36, 37.  Plaintiff, through counsel, filed her oppositions on September 12, 2017 ("Opp. to June 22, 2017 Motion" and "Opp. to August 9, 2017 Motion"), ECF Nos. 41, 43, with concise statements of fact in support of those oppositions ("Pl. June 22, 2017 CSF" and "Pl. August 9, 2017

CSF"). ECF Nos. 42, 44. Defendant filed its replies on October 4, 2017. ECF Nos. 47, 48. On October 7, 2017, Plaintiff filed a Memorandum in Response to Reply (ECF No. 50) along with a supplemental declaration (ECF No.51).[1] The Court held a hearing on Defendant's Motions on October 20, 2017.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of

---

[1] The filing of supplemental briefing without leave of Court violates the Local Rules. See Local Rule 7.4 (discussing the opposition and reply brief and stating "[n]o further or supplemental briefing shall be submitted without leave of court"). Plaintiff did not seek leave of court to file her Memorandum in Response to Reply. Furthermore, as discussed herein, the Court does not address the argument from Defendant that is the focus of this Memorandum. Accordingly, the Court declines to consider Plaintiff's Memorandum in Response to Reply and the corresponding declaration.

3

identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating

that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor") (internal citation and quotation omitted).

**DISCUSSION**

### I. Defendant's June 22, 2017 Motion for Summary Judgment

Defendant has moved for summary judgment on the basis that it is not a proper party to this action and is not liable for Plaintiff's Title VII claims as the parent company of the holding company whose subsidiary hired Plaintiff. See June 22, 2017 Motion at 3-4.

"In the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary." Ass'n of Mexican-Am. Educators v. California, 231 F.3d 572, 582 (9th Cir. 2000) (quoting Watson v. Gulf and W. Indus., 650 F.2d 990, 993 (9th Cir. 1981)); see also Razo v. Timec Co., Inc., No. 15-CV-03414-MEJ, 2016 WL 6576625, at *8 (N.D. Cal. Nov. 7, 2016) (stating that there is a strong presumption that the parent company is not the employer when the subsidiary hired plaintiff); E.E.O.C. v. NCL Am., Inc., Civ. No. 06-00451 SOM/BMK, 2008 WL 281524, at *7 (D. Haw. Feb. 1, 2008) (same). Special circumstances include where "the parent-subsidiary relationship is a 'sham' or that circumstances exist that would render the parent liable for the debts of its

5

subsidiary." Watson, 650 F.2d at 993.[2]  In Watson, the Ninth Circuit further held that such special circumstances would exist if there was any evidence that the parent corporation participated in or influenced the employment policies of the wholly owned subsidiary or the parent corporation had undercapitalized the subsidiary to defeat potential recovery by a Title VII plaintiff.  Id.

Defendant provides the Declaration of Tim Hopper, who is employed as the President, Government Division of Defendant. In his declaration, Mr. Hopper states that CFS hired Plaintiff and that Defendant never employed her or any individuals at the location where she worked.  Hopper Decl. ¶¶ 4-6.  He further states that CGS is a wholly owned subsidiary of Defendant and that legal ownership of CFS was transferred to CGS in 2013, two years before CFS hired Plaintiff.  Id. ¶¶ 3-4.  Therefore, Defendant and CFS do not have a direct parent-subsidiary

---

[2] A parent company may be liable for the debts of its subsidiary when circumstances warrant piercing the corporate veil.  See AFL-CIO v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1475 (9th Cir. 1994) ("[T]he [veil-piercing] doctrine . . . allows creditors of corporations to pierce the corporate shell to hold shareholders liable for corporate debts if they abuse the corporate form to defraud creditors.").  In determining whether to pierce the corporate veil, the Ninth Circuit considers: "(1) the amount of respect given to the separate identity of the corporation by its shareholders, (2) the degree of injustice visited on the litigants by recognition of the corporate entity, and (3) the fraudulent intent of the incorporators."  Id. at 1475.  A plaintiff "must prevail on the first threshold factor and on one of the other two."  Id.

6

relationship. Defendant is the parent company of the holding company whose subsidiary hired Plaintiff. Plaintiff does not provide any evidence to contradict Mr. Hopper's Declaration. In addition, Plaintiff has failed to show that any of the special circumstances discussed in Watson apply here. The Court, therefore, finds that Defendant has met its burden on summary judgment.

Plaintiff argues that Defendant can be considered her employer for purposes of Title VII under the integrated enterprises test. Under this test, the Ninth Circuit has held that multiple businesses could be treated as a single employer for Title VII purposes if they had "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations; and (4) common ownership or financial control." Kang v. U. Lim Am., Inc., 296 F.3d 810, 815 (9th Cir. 2002). The most critical factor is the central control of labor relations. Id.

However, Plaintiff fails to note that the integrated enterprise test only applies in certain contexts. See NCL Am., Inc., 2008 WL 281524, at *8. "The Ninth Circuit has clarified that this test applies when an allegedly discriminatory employer, not covered by Title VII because it has fewer than fifteen employees, needs to be integrated with another employer to fulfill Title VII's fifteen-employee requirement." Id.

("[T]he test is only employed to determine statutory coverage under Title VII if there is not already an otherwise qualified employer subject to the suit."); see Anderson v. Pac. Mar. Ass'n, 336 F.3d 924, 929 (9th Cir. 2003) ("We use the integrated enterprise test to judge the magnitude of interconnectivity for determining statutory coverage."); Nowick v. Gammell, 351 F. Supp. 2d 1025, 1034 (D. Haw. 2004) (Kay, J.) ("Here, there is no question that MLVO, Plaintiff's direct employer, qualified as an employer under Title VII . . . Thus, the integrated enterprise test is not applicable in this case.").[3] "The integrated employer test advances the antidiscrimination purpose behind Title VII by preventing employers from artificially dividing themselves into organizations with fewer than 15 employees in order to escape liability." Rhodes v. Sutter Health, No. CIV. 2:12-0013 WBS DAD, 2012 WL 1868697, at *4 (E.D. Cal. May 22, 2012).

The Court finds that Plaintiff has not demonstrated that this test applies. Plaintiff has not come forth with any evidence to demonstrate that CFS had less than fifteen employees. Accordingly, the Court will not apply the integrated enterprise test. However, even if, assuming arguendo, the integrated enterprise test applies, Plaintiff does not satisfy

---

[3] At the hearing, Defendant's counsel stated that CFS had approximately 500 employees in October 2015.

8

the four-part test.

With respect to the interrelated operations factor, Plaintiff points to an employee handbook, which is titled "Employee Handbook, Chugach Alaska Corporation, Subsidiaries, Joint Ventures," dated January 2011, and revised May 16, 2011, which discusses a workplace harassment policy.  Pl. June 22, 2017 CSF, Ex. 1 at 1.  Within that employee handbook, Plaintiff points to the following statement, "The Board of Directors for Chugach Alaska Corporation has approved and adopted the policies and procedures in this handbook.  Chugach Alaska Corporation, Subsidiaries and Joint Ventures are hereafter referred to as the 'Company.'"  Id. at 2.  The Court, however, finds Plaintiff's argument regarding this handbook to be problematic.  Plaintiff has not demonstrated that CFS adopted the policies in this handbook.  Furthermore, this handbook is dated 2011, which is prior to CAC's transfer of ownership of CFS to CGS.  Furthermore, even if Plaintiff demonstrated that CFS adopted this employee handbook and that it applied to Plaintiff when she was employed by CFS, the handbook, by itself, is insufficient evidence of interrelated operations.

With respect to the common management factor, Plaintiff next asserts that during Plaintiff's employment in 2015, the same individual was a Director and Treasurer of Defendant and Treasurer, Secretary, and Director of CFS, and the

9

same individual was a Vice President of Defendant and President of CFS. Pl. June 22, 2017 CSF, Ex. 2 at 2, Ex. 3 at 1. The Court finds Plaintiff's evidence on this factor to be insufficient. Although Plaintiff has demonstrated that a couple of the individual officers had multiple roles among the related companies, the Court finds that this evidence on its own does not establish that the management of Defendants was unified or common. See NCL Am., Inc., 2008 WL 281524, at *10 ("While individual officers wore multiple hats among the related corporations, it does not follow that the management was unified or 'common.' Plaintiffs simply conclude that the overlapping of certain officers establishes 'common management.'").

With respect to establishing the third factor, the centralized control of labor relations, Plaintiff again discusses the employee handbook and states that in the employee handbook Defendant's President acknowledges all employees of Defendant and its subsidiaries and joint ventures as "fellow employee." Pl. June 22, 2017 CSF, Ex. 1 at 3. Plaintiff points out that the handbook has a form for all employees of "the Company" to sign to demonstrate their receipt and acknowledgment of the handbook. Id. at 4. Plaintiff further states that the employee handbook directs employees to report any harassment incidents to "any manager in the Company" or to call one central telephone number for "the Company." Id. at 6. In addition to

the issues regarding the employee handbook as previously discussed, the Court finds that this evidence alone is insufficient to meet Plaintiff's burden as to the third factor. Plaintiff does not provide any evidence that Defendant was involved in the hiring and firing decisions for employees at CFS or set other employment policies or employee benefits.[4]

Plaintiff does not present any evidence in regard to the fourth factor—common ownership or financial control. In sum, the Court finds that Plaintiff has failed to demonstrate that Defendant and CFS are an integrated enterprise.

For the aforementioned reasons, the Court finds that Plaintiff has failed to demonstrate any basis that would justify Defendant's liability for the Title VII violations by its holding company's wholly-owned subsidiary. Accordingly, the Court grants Defendant's Motion for Summary Judgment because Defendant is not the proper party in this action. The Court

---

[4] In addition, Plaintiff, citing to her EEOC charge of discrimination, states that the EEOC "determined the Defendant was an employer of the Plaintiff, when it prepared, and accepted for filing, Plaintiff's administrative charge against the Defendant . . . for alleged Title VII employment discrimination." Opp. to June 22, 2017 Motion at 4. However, the Court does not find this statement accurate. The Charge of Discrimination reflects that the document was filled out and filed by Plaintiff rather than the EEOC, and there is nothing in the EEOC Charge of Discrimination to suggest that the EEOC made a determination regarding whether Defendant was the proper subject of Plaintiff's charge.

11

dismisses Plaintiff's case without prejudice.[5]

### II. Defendant's August 9, 2017 Motion for Summary Judgment

Defendant also moves for summary judgment on Plaintiff's retaliation claim. Defendant argues that even if it can be liable for CFS's conduct, CFS had a legitimate, non-discriminatory reason for declining to extend Plaintiff's temporary employment. Because the Court grants Defendant's June 22, 2017 Motion for Summary Judgment on the basis that Defendant is not the proper party to this action, the Court denies Defendant's August 9, 2017 Motion for Summary Judgment as moot.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment filed on June 22, 2017, ECF No. 33. The Court DENIES Defendant's Motion for Summary Judgment filed on August 9, 2017, ECF No. 36, as moot. The Court DISMISSES the case WITHOUT PREJUDICE.

---

[5] Defendant argues for the first time in its Reply that Plaintiff did not timely file her Charge of Discrimination with the EEOC. The Court notes that it is inappropriate to consider arguments raised for the first time in Reply. See Local Rule 7.4 ("Any argument raised for the first time in the reply shall be disregarded."). Moreover, given that the Court grants Defendant's Motion for the reasons previously discussed, it need not consider this additional argument.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 23, 2017



Alan C. Kay
Sr. United States District Judge

Mearig v. Chugach Alaska Corporation, Civ. No. 16-00500 ACK-KSC, Order Granting Defendant's June 22, 2017 Motion for Summary Judgment and Denying Defendant's August 9, 2017 Motion for Summary Judgment